I dissent from the majority opinion. A study of the record in this case convinces me that a grave injustice would be done if this Court did not uphold the written, analytical opinion of J.T. Noblin, Chairman of the Mississippi Workmen's Compensation Commission, and the opinion of the Circuit Court finding that opinion to be correct.
There is no real dispute in the record. The only testimony was that of the claimant, Ernest Chapman, and Roy Otto Darby, III, a psychologist with the Jackson Mental Health Center. Mr. Darby had a master's degree and equivalent schooling for a pending PHD in Clinical Psychology. All he lacked was completing his internship. His testimony has to be accepted by this Court and is, in any manner, only offset by the cold words of the record relating the claimant's testimony. In my humble opinion, we, as an appellate court, cannot read into the appellant's testimony the evidence of a mentally competent person as was implied in the majority opinion.
The sole question before the Commission, the Circuit Court, and this Court was whether or not the two-year statute of limitations for bringing the claim was tolled by Mississippi Code Annotated section 71-3-35(2) (1972), which provides as follows:
 If a person who is entitled to compensation under this chapter is mentally incompetent or a minor, the limitation for filing application for benefits shall not be applicable so long as such person has no guardian or other authorized representative, . . . .
Appellant's testimony revealed that he has no education and cannot read or write. The only work he has done is such as hauling pulpwood, fixing flat tires and putting gasoline in vehicles. It is undisputed that he even needs supervision to do this type of work, and always has.
The appellant received his injury on December 31, 1972. His request for compensation was not made until June 6, 1975, five months and one week after the statute of limitations had expired. The record is completely clear that during this period of time he had no idea that he had a possible claim for workmen's compensation and could not appreciate it if he had such knowledge. It is clear from the record that someone finally got an attorney to check the medical and hospital records to ascertain the possible claim, something that obviously not even his doctor had advised him. It could be that this situation resulted from the fact that he was treated at the University Hospital where he was seen by many different doctors, interns and students.
Mr. Darby, an admitted expert, had the only testimony in the record on which appellee's condition can be based, and testified that Chapman related the events that had happened over the years "haphazardly." During the interview and the tests, Chapman's thought processes "as reflected in his speech, would tend to become conjunctional, which means he would begin on one subject and would trail off into a series of other subjects." The tests revealed that Chapman had an IQ of 54, with his performance IQ being 48. Several tests were administered, one of which was Chapman's performance on the "Bender Gestalt test." which revealed "severe perceptual motor deficits" and a "very low level of neuro-psychological functioning." One of the main tests given Chapman revealed that "he's a man whose mental approach shows deficiency in being able to cope in an ambiguous situation or a non-structured situation and to put it together as a meaningful whole."
The psychological evaluation summary was as follows:
 The results of the total interview data and the test data portray an individual with significant neurological impairment as well as personality handicaps. His overall mental function is evaluated to be on the borderline to retarded range. There is evidence of significant neuropsychological deficit, particularly in the perceptual motion operations and memory areas. His personality development and organization is likewise poorly organized. His view of realty is poorly, although this is not a psychotic condition. He is only mentally able to deal with emotional demanding *Page 1104 
situations. His emotions are not well indicated to his personality and to me he shows a number of deficits in all area.
The specialist further testified that Chapman "was oriented as to the person, place and situation but not as to time." He further stated that he had reservations as to whether Chapman could adequately perform jobs such as a pulpwood hauler and changing tires. To do this, he would have to "be highly supervised with no responsibilities."
With the above undisputed evidence, the only way the hearing officer, the two members of the Commission and this Court could hold the appellee mentally competent was, as stated at the outset, from the cold words in the record, which, with deference, do not justify discarding the undisputed expert testimony in connection with the history of appellee both before and after his injury.
There are a number of "statutes of limitations" barring claims and various types of actions in a number of different activities and legal situations. An examination of them reveals that these statutes state that "a person of unsound mind" is not subject to the limitation period. The Legislature, in enacting the Workmen's Compensation law, recognized that one excuse for substituting that law for the old master-servant liability was a liberal interpretation of the act in favor of the injured working person. The Legislature saw fit not to follow the language of the other statutes of limitations but only required that the guideline for tolling the two-year statute in question was that the claimant "be mentally incompetent." It is beyond this writer's thinking that the evidence related above, even when considering the cold testimony of the claimant in the record, would justify a finding by any judicial or quasi-judicial body that the claimant had sufficient mental competency to permit the running of the two-year statute of limitations.
I realize the many opinions of this Court holding that the Commission is the trier of fact, even though the statute granting appeal from the Commission to the circuit court mandates that the "circuit court shall review all questions of law and of fact,"
without any statutory limitation. Even without this mandate, I do not think that the holding of the two members of the Commission should be of any greater import than the one member, the chairman, whose opinion is hereinbefore discussed. This is reasoned by the mandate in the Workmen's Compensation Law (Code §71-3-85), that one member of the Commission shall have represented employers, one member shall have represented employees, with one member being impartial. I do not think that the circuit court or this Court should be put in a position of guessing which member represents which party and going along with the theory that what the majority finds as a fact is in reality the correct fact, or whether or not the factual finding is erroneous. As stated above, this is contrary to the statute which requires the circuit court to review questions of fact.
I would affirm the finding that the appellee was not mentally competent as required by the statute.
PATTERSON, C.J., and LEE, J., join in this dissent.